UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RICARDO APARECIDO BARBOSA DA CUNHA,

         Petitioner,    DECISION AND ORDER

-vs-
                 25-CV-6532-MAV

JOSEPH FREDEN, *Deputy Field Office Director,*
*U.S. Immigration and Customs Enforcement*,[1]

         Respondent.

## INTRODUCTION

Petitioner Ricardo Aparecido Barbosa Da Cunha, a citizen of Brazil who has been physically present in the United States for approximately 20 years, was apprehended by federal agents in Massachusetts, and transferred to the Buffalo Federal Detention Facility ("BFDF") in the custody of U.S. Immigration and Customs Enforcement ("ICE") on September 26, 2025. ECF No. 15 ¶ 1. He has filed this action pursuant to 28 U.S.C. § 2241, arguing that his continued detention without a bond hearing is a violation of the Immigration and Nationality Act ("INA") and associated regulations, as well as his due process rights under the Constitution. *Id.* ¶¶ 31–43.

Though the original petition in the instant case was filed in the District of Massachusetts on the day Petitioner was detained (ECF No. 1), the matter was transferred to this District on October 2, 2025, after the parties agreed that Petitioner

---

[1] Notwithstanding Petitioner's listing of the Acting Director of Immigration and Customs Enforcement, the Secretary of Homeland Security, and the Attorney General as respondents to the petition in addition to Joseph Freden, Freden is the only proper respondent. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (stating that the proper respondent in a federal habeas petition is generally "the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."); *see also, e.g., Gutierrez v. Barr*, No. 20-CV-6078-FPG, 2020 WL 2059845, at *3 (W.D.N.Y. Apr. 29, 2020) ("[T]he only proper respondent is Jeffrey Searls, Officer in Charge at the Buffalo Federal Detention Facility . . . ."). Accordingly, the other Respondents are dismissed from this case and the Clerk of Court is directed to remove them from the docket.

1

was already in the custody of Respondent Freden at the time of filing. ECF Nos. 10–11. Plaintiff filed his First Amended Petition on October 3, 2025, and the Court issued an order to show cause that same day. ECF Nos. 15–16. On October 14, 2025, Respondent filed a motion to dismiss the petition. ECF No. 21. Petitioner filed his reply on October 16, 2025. ECF No. 23.

The Court held a virtual hearing on the parties' submissions on October 20, 2025. ECF No. 24. Following the hearing, the Court issued a text order granting Petitioner's application for habeas relief to the extent that Respondent is directed to hold a bond hearing for Petitioner before an Immigration Judge, and denying Respondent's motion to dismiss. ECF No. 25. The present decision and order memorializes the Court's reasoning and supersedes the text order.

## LEGAL STANDARD

28 U.S.C. § 2241(c)(3) authorizes federal courts to grant habeas relief to prisoners or detainees who are "in custody in violation of the Constitution or laws or treaties of the United States." Federal courts retain jurisdiction under § 2241 to review purely legal statutory and constitutional claims regarding the government's detention authority, but jurisdiction does not extend to "discretionary judgment," "action," or "decision" by the Attorney General with respect to either detention or removal.[2] *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (citing, *inter alia*, *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)).

In addition to the Petition, Respondent has filed a motion to dismiss. ECF No. 21. "'A motion to dismiss a habeas petition is reviewed under the same standard as a

---

[2] For instance, 8 U.S.C. § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Additionally, judicial review of removal orders is available only through filing a "petition for review" in a Circuit Court pursuant to 8 U.S.C. § 1252.

2

motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6).'" *Petrova v. U.S. Dep't of Homeland Sec.*, No. 2:25-CV-00240, 2025 WL 2772764, at *10 (D. Vt. Sept. 26, 2025) (quoting *Pittman v. Cook*, 2020 WL 2840256, at *3 (D. Conn. June 1, 2020)). To survive a motion to dismiss under Rule 12(b)(6), the petition "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In ruling on a motion to dismiss, even in a habeas context, a court "'may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken.'" *Tripathy v. Schneider*, 473 F. Supp. 3d 220, 226 (W.D.N.Y. 2020) (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)). Under Rule 201 of the Federal Rules of Evidence, the Court may, on its own, take judicial notice of facts that are not subject to reasonable dispute because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). For instance, the Second Circuit has noted that "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (finding, among other things, that documents filed with the Securities and Exchange Commission were judicially noticeable on a motion to dismiss.).

## BACKGROUND

The following background is drawn from Petitioner's First Amended Petition (ECF No. 15). Further, the Court takes judicial notice of the following documents filed by Respondent's counsel: a Notice to Appear, Form I-213, and an I-200 Warrant for

arrest, both issued by ICE. ECF No. 22; *see e.g, Dent v. Holder*, 627 F.3d 365, 371 (9th Cir. 2010) (taking judicial notice of the existence of documents in an alien's "A-file" on the basis that "they are official agency records").

Petitioner entered the country in or about 2004 by crossing the U.S. border with Mexico.[3] ECF No. 15 ¶ 2. He owns his own construction business and his own home, and is married to a Brazilian citizen, with whom he has two children who are United States citizens, aged twelve and seventeen. *Id.* ¶ 3. In 2016, Petitioner filed an application for asylum with the United States Citizenship and Immigration Services, alleging a fear of persecution if returned to Brazil. *Id.* ¶ 3. On September 26, 2025, Petitioner was detained by federal agents in Norwood, Massachusetts while on his way to work. *Id.* ¶ 4. Until the September 26 detention, Petitioner had never been detained or held in custody by U.S. immigration officials, and he has no known criminal history. *Id.* ¶ 2.

After his detention, Petitioner was promptly transferred from Massachusetts to the BFDF. *Id.* ¶ 24. While at the BFDF, he was served with a Notice to Appear[4] and a Form I-200 warrant for arrest. ECF No. 22 at 6–10. By the time the amended Petition was filed on October 3, 2025, Petitioner had requested a bond hearing from an Immigration Judge, but the Judge "alleged in response that [Petitioner] is not eligible for one, based on the recent [Board of Immigration Appeals ("BIA")] decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025)." ECF No. 15 ¶ 15. *Hurtado*

---

[3] Though he does not allege as much in the Petition, the circumstances surrounding his detention suggest that he crossed the border without detection or authorization.

[4] Section 1229(a)(1) of Title 8 of the United States Code provides that removal proceedings are initiated against an alien when he is served with a written notice to appear that specifies – among other things – the nature of the proceedings against the alien, the legal authority under which the proceedings are conducted, the acts or conduct alleged to be in violation of the law, the charges against the alien and statutory provisions alleged to have been violated, the time and place at which removal proceedings will be held, and the consequences for failing to appear at the proceedings.

holds, in pertinent part, that "Immigration Judges . . . have no authority to redetermine the custody conditions of an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years." *Hurtado*, 29 I. & N. Dec. at 228. Thus, at the time of the hearing on the Court's Order to Show Cause, Petitioner was still being held in custody at the BFDF without a bond hearing. ECF No. 15 ¶ 24, 29.

## DISCUSSION

The First Amended Petition ("FAP") states three relevant grounds[5] for relief: (1) violation of 8 U.S.C. § 1226(a) and associated regulations; (2) violation of Petitioner's Fifth Amendment right to due process based on Respondent's failure to provide a bond hearing under 8 U.S.C. § 1226(a); and, (3) violation of Petitioner's Fifth Amendment right to due process based on Petitioner's civil detention without an individualized hearing. Respondent's motion to dismiss maintains that because Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) – and not § 1226(a) as Petitioner claims – his detention is mandatory by statute until he is removed, and Petitioner is not entitled to any further process under the Fifth Amendment at this time. ECF No. 21-1 at 2, 5–10.

## I. Congress' Plenary Power over Immigration Laws

Article I, Section 8, Clause 4 of the Constitution gives Congress the power "[t]o establish an uniform Rule of Naturalization." In that regard, while the Supreme Court has recognized that immigration officials have "broad discretion" in carrying out immigration laws, it has repeatedly held that Congress – not the Executive

---

[5] The FAP also included a fourth ground for relief – violation of Petitioner's Fifth Amendment right to *substantive* due process (FAP ¶ 41–43) – but Petitioner's brief concedes that this argument is moot given the initiation of removal proceedings against Petitioner. ECF No. 23 at 3, n.1.

Branch – has "plenary power" over the admission and exclusion of aliens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–140 (2020); *Arizona v. United States*, 567 U.S. 387, 396 (2012); *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972); *Boutilier v. Immigration and Naturalization Service*, 387 U.S. 118, 123 (1967).

Under the laws established by Congress, an alien gains "admission" or is "admitted" to the United States if he or she gains "lawful entry . . . into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Certain classes of aliens are, by law, inadmissible. Thus, 8 U.S.C. § 1182(a)(1)–(10) identifies several grounds for finding that an alien is ineligible to be admitted to the United States, including health conditions, criminal history, security threats, likelihood of becoming a public charge, labor certifications and qualifications (or lack thereof), prior removals and – as most relevant here – illegal entry and violation of immigration laws (§ 1182(a)(6)) and inadequate documentation (§ 1182(a)(7)).

Where an alien is inadmissible, he may depart voluntarily (*e.g.*, § 1225(a)(4)), be subject to expedited removal by immigration officials (*e.g.*, § 1225(b)(1)), or be entered into removal proceedings (§ 1229a). Further, even after admission, any alien in the United States can be removed if the alien was inadmissible at the time of entry or adjustment of status, violates his status, commits a specified crime, fails to register or falsifies documents, threatens the security of the United States, becomes a public charge within a specified period of time, or votes unlawfully. 8 U.S.C. §§ 1227, 1229, 1229a.

Depending upon the reason for the denial of the alien's admission or the initiation of removal proceedings, the alien either must be detained pending removal, or may be detained at the discretion of immigration officials. 8 U.S.C. §§ 1225(b)(1)–

(2), 1226, 1231.

## II. The Statutory Language at Issue

The issue for decision in the instant matter is not whether Petitioner is admissible, nor even whether he is removable. Rather, the issue is whether he is entitled to a bond hearing and the potential for release during the pendency of his removal proceedings. To resolve this issue, the Court must determine whether Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A) as Respondent argues, or 8 U.S.C. § 1226(a) as Petitioner maintains.

### A. The Parties' Arguments

Respondent maintains that Petitioner is detained under 8 U.S.C. § 1225(b)(2)(A), which states, in pertinent part, that:

> in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title [i.e., removal proceedings].

Respondent argues that Petitioner is properly detained under this provision because not only is he an "applicant for admission," but also because he is "not clearly and beyond a doubt entitled to be admitted." Under Respondent's interpretation of the provision, the terms "applicant for admission" and "seeking admission" are used interchangeably. ECF No. 21-1 at 5–6.

On the other hand, Petitioner maintains that he is detained under 8 U.S.C. § 1226(a), which provides that:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [mandating the detention of certain criminal aliens] and pending such decision, the Attorney General –

>    (1) may continue to detain the arrested alien; and
>
>    (2) may release the alien on –
>
>       (A) bond of at least $1,500 with security approved by, and containing conditions described by, the Attorney General; or
>
>       (B) conditional parole; but
>
>    (3) may not provide the alien with work authorization . . . unless the alien is lawfully admitted for permanent residence or otherwise would . . . be provided such authorization.

Petitioner argues that he is properly detained under this provision, in part, because he was arrested on a warrant, and § 1226(a) provides for arrest on a warrant where § 1225 does not. ECF No. 23 at 7 n.2. In addition to the warrant argument, Petitioner also contends that he cannot be detained under § 1225(b)(2)(A) because he does not meet all three of the elements required for detention under that provision: i.e., that he is "(1) an 'applicant for admission,' (2) 'seeking admission,' and (3) not 'clearly beyond a doubt entitled to be admitted.'" *Id.* at 8. Under Petitioner's reading of § 1225(b)(2)(A), "seeking admission" is not interchangeable with "applicant for admission," but rather requires the additional performance of "some kind of affirmative action taken to obtain authorized entry." *Id.* at 7 (quoting *Vasquez v. Feeley*, No. CV 25-2542-RFB-EJY, 2025 WL 2676082, at * 23 (D. Nev. Sept. 17, 2025)).

Thus, whether Petitioner is detained under § 1225(b)(2) or § 1226(a) is an issue of statutory interpretation that hinges to a large degree on the meaning of "seeking admission." *See Puga v. Assistant Field Off. Dir., Krome N. Serv. Processing Ctr.*, No. 25-24535-CIV, 2025 WL 2938369, at *4 (S.D. Fla. Oct. 15, 2025).

**B. Section 1225(b)**

As discussed above, Respondent maintains that Petitioner is detained under

§ 1225(b)(2)(A), and argues that "applicant for admission" and "seeking admission" are used interchangeably in that provision. Although "applicant for admission" is defined in § 1225(a)(1) as "an alien present in the United States who has not been admitted or who arrives in the United States . . .," and the term "admission" is defined in § 1101(13)(A) as "lawful entry . . . into the United States after inspection and authorization by an immigration officer," the phrase "seeking admission" is not defined.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985). Thus, the Court's "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* (citing, *inter alia, Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 477 (1992)).

"When a term is not defined by statute, courts may 'look to its ordinary meaning found in contemporary dictionary definitions,' that is, in dictionaries that were available when the statute was enacted." *Nero v. Uphold HQ Inc.*, 688 F. Supp. 3d 134, 139–40 (S.D.N.Y. 2023) (quoting *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 269 (2d Cir. 2023)). Section 1225(b) in its present form was passed into law in 1996. *See* Pub.L. 104-208, Div. C, Title III, § 302(a) (Sept. 30, 1996). That same year, Webster's Dictionary included the following relevant definitions of the term "seek":

> 1. to go in search or quest of . . . . 2. to try to find or discover by searching or questioning . . . . 3. to try to obtain . . . . 4. to try or attempt . . . . 5. to

go to . . . . 6. to ask for; request . . . .

*Seek,* WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (1996), available at https://archive.org/ (last accessed Nov. 6, 2025). These definitions suggest, as Petitioner argues, that "seeking admission" involves active efforts to obtain "admission." Thus, whereas an "applicant for admission" is an alien present in the United States without admission or arriving from outside of the United States, an alien who is "seeking admission" is an alien in search of or trying to obtain "lawful entry after inspection and authorization by an immigration official." The two meanings are related, but distinct.

This reading of "seeking admission" is supported by the context of § 1225(b)(2). First, using "seeking admission" interchangeably with "applicant for admission" would render the former "superfluous," a clear violation of the rule against surplusage in statutory construction. *See, e.g., Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434, at *7 (E.D.N.Y. Oct. 5, 2025) (collecting cases). That is, "if . . . § 1225(b)(2) applied to all noncitizens who are 'applicants for admission,' then there would be no need for Congress to have separately referenced a sub-category of persons 'seeking admission' in the specific section . . . ." *Hyppolite v. Noem*, No. 25-CV-4304 (NRM), 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) (quoting *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("every clause and word of a statute should have meaning")). In addition, using the two terms interchangeably would ignore their grammatical construction; as several other courts have discussed, the conjugation of the verb "to seek" in the provision "necessarily implies some sort of present tense action," but present tense action is not "necessarily implied" in the term "applicant for admission." *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug. 13, 2025) (quoting *Martinez v.*

10

*Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)).

Moreover, the phrase "seeking admission" is used in two other places in the statute, both of which suggest that the meaning of "seeking admission" is related to, but distinct from, "applicant for admission." Section 1225(a)(3) requires that all aliens "who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). "Otherwise" means "under other circumstances," "in another manner; differently," "in other respects." *Otherwise,* WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE (1996), available at https://archive.org (last accessed Nov. 6, 2025). Thus, an alien may be "seeking admission," but may do so "under other circumstances" or "in another manner" than as an applicant for admission. Similarly, § 1225(a)(5) provides that "[a]n applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant in seeking admission to the United States . . . ." Both uses of the phrase "seeking admission" indicate that an applicant for admission may be seeking admission, but that the terms are distinct and the latter suggests an active effort to obtain lawful entry through inspection by an immigration officer.

Lastly, the context of § 1225 as a whole supports a limited scope for § 1225(b). As another district court recently explained:

> The title of § 1225 is revealing: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." (emphasis added). The use of "arriving" to describe noncitizens strongly indicates that the statute governs the entrance of noncitizens to the United States. This reading is bolstered by the fact that § 1225 clearly establishes an inspection scheme for when to let noncitizens into the country. *See* § 1225; *see Dubin v. United States*, 599 U.S. 110, 121 (2023) ("a title 'is especially valuable [where] it reinforces what the text's nouns and verbs independently suggest' ") . . . . In fact, the subheading for

11

> § 1225(b)(2)(A) reads "Inspection of Other Aliens," reinforcing the idea that the subsection applies to those coming in, not already present.
>
> The statute also explicitly addresses its effect on "stowaways" and "crewm[e]n," words that suggest arrival at a border or port of entry. That Congress separated removal of arriving aliens from its more general section for "Apprehension and detention of aliens," § 1226, implies that Congress enacted § 1225 for a specific, limited purpose. *See Dubin*, 599 U.S. at 122 . . . .

*Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025). *See also Ortiz v. Freden*, No. 25-CV-960-LJV, 2025 WL 3085032, at *9 (W.D.N.Y. Nov. 4, 2025) (examining § 1225 in "the statutory scheme of immigration law.").

Because Respondent has failed to show that Petitioner was "seeking admission" at the time of his arrest, the Court agrees with Petitioner that Respondents have failed to demonstrate that § 1225(b)(2)(A), and not § 1226(a), applies in Petitioner's case.

### III. Petitioner is Detained under § 1226(a)

Moreover, the Court finds that Petitioner's circumstances support the conclusion that his detention was under § 1226(a). Contrary to the language of § 1225(b), § 1226(a) does not specify a class or classes of aliens who should be detained under the provision, but governs more generally the "apprehension and detention of aliens." As opposed to the inspection regime for aliens entering the United States set forth in § 1225, the Supreme Court has characterized § 1226(a) as "authoriz[ing] the government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289 (emphasis added).

Here, Petitioner had not presented himself to an immigration officer for inspection prior to his arrest; rather, he was in Norwood, Massachusetts and on his way to work. ECF No. 15 ¶ 4. Indeed, he had been at liberty in the interior of the

12

United States after an admittedly unlawful entry some 20 years before. *Id.* Additionally, the Court agrees with Petitioner that the issuance of a warrant was significant, and supports the inference that even the agency originally considered Petitioner to be detained under § 1226(a). ECF No. 23 at 7 n.2.; s*ee, e.g., Hyppolite*, 2025 WL 2829511 at *8 (agreeing with the Court in *Lopez Benitez*, 2025 WL 2371588, at *5 that the agency's initial treatment of the petitioner is a relevant consideration). In fact, the references on the warrant itself were to authorization for detention under INA Section 236 (§ 1226) and Section 287 (§ 1357), and not Section 235 (§ 1225).[6]

Thus, the Court finds that Petitioner was detained under § 1226(a), and not subject to mandatory detention under § 1225(b)(2). As such, he is entitled to a bond hearing "at the outset of detention" as established by existing federal regulations. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

## IV. Due Process

Although the Court's text order suggested a due process analysis, upon further consideration the Court declines to reach the merits of Petitioner's Fifth Amendment due process claim in this decision. *See, e.g., Pizarro Reyes*, 2025 WL 2609425, at *8. Petitioner has received the relief he requested based on the Court's finding regarding his first cause of action, entitlement to a bond hearing under § 1226(a) and its implementing regulations. ECF No. 15 ¶¶ 31–34. Moreover, Petitioner did not elaborate on his due process claims in his brief, but rather focused entirely on the interpretation of § 1225(b) and § 1226(a). ECF No. 23.

---

[6] Until a few months ago, it seems that even the Government believed aliens in Petitioner's position were detained under § 1226. *See, e.g., J.G.O. v. Francis*, No. 25-CV-7233 (AS), 2025 WL 3040142, at *2 (S.D.N.Y. Oct. 28, 2025) (noting the recent influx of cases in which the government "has detained noncitizens pursuant to § 1226(a), then, only afterward, argued that they were instead detained under § 1225(b)(2) and ineligible for bond.").

## CONCLUSION

Accordingly, as indicated in the Court's text order, Respondent's motion to dismiss [ECF No. 21] is DENIED; and Petitioner's application for habeas relief [ECF No. 15] is GRANTED to the extent that the Court finds he is detained under 8 U.S.C. § 1226(a) and is therefore entitled to a bond hearing under the relevant regulations. ECF No. 24.

In its prior text order, the Court ORDERED that Respondent hold a bond hearing for Petitioner within ten (10) days of the date of this order. ECF No. 25. The bond hearing was held on October 28, 2025. ECF No. 26. After some initial difficulty with the process of posting bond, Petitioner's counsel has confirmed that Petitioner was released on bond as of October 29, 2025. ECF No. 29.

Therefore, the Clerk of Court is directed to close this action.

SO ORDERED.

Dated:   November 25, 2025
         Rochester, New York

ENTER:

_____
HON. MEREDITH A. VACCA
United States District Judge